United States District Court
Southern District of Texas
Victoria Division

STATE OF TEXAS,
   *Plaintiff,*
v.
ROCHELLE WALENSKY, *et al.*;
   *Defendants.*

Case 6:22-cv-13

**Motion for Temporary Restraining Order and Expedited Discovery**

Unsatisfied with violating the APA by promulgating without notice and comment an internally inconsistent rule that conflicts with other rules, the Defendants compound their disregard for the law by implementing the rule a month before it is scheduled to go into effect. They have no discretion to do so. The Termination Order that Texas is challenging is not scheduled to go into effect until May 23; the August 2021 Order that controls until then imposes mandatory requirements that the Defendants cannot simply disregard.

That an agency should demand adherence to an improperly enacted policy is problematic enough, but the Court is faced here with agencies that refuse to follow the policies they have set for themselves. That is a finger in the eye to the rule of law, flatly prohibited by blackletter administrative law. The Court should issue a temporary restraining order requiring the Defendants to enforce the Title 42 policy set forth in the August 2021 Order until the later of (1) May 23, 2022 or (2) further order of the Court.

**Facts**

The August 2021 Order is mandatory. *See* Exh. 1 (ECF No. 1-3). That order, issued under Title 42, does not give the Defendants permission to exclude certain persons from the United States. Rather, it wholesale "suspend[s] the right to introduce persons into the United States" who have traveled "from

1

Canada or Mexico (regardless of their country of origin) who would otherwise be introduced into a congregate setting in a [port of entry] or U.S Border Patrol Station," such as "noncitizens who do not have proper travel documents, noncitizens whose entry is otherwise contrary to law, and noncitizens who are apprehended at or near the border seeking to unlawfully enter the United States[.]" *Id.* at 42,840–41. Customs officers can, on a "case-by-case" basis, except "persons . . . based on the totality of the circumstances, including consideration of significant law enforcement, office and public safety, and public health interests" based on "standards for such exceptions" developed in "consult[ation] with CDC[.]" *Id.* at 42,840, 42,841.

On April 1, the Defendants issued the Termination Order, which terminates the August 2021 Order effective May 23, 2022. Exh. 2 (ECF No. 1-1) at 19,955. According to the Termination Order, the delay between April 1 and May 23 was necessary for DHS "to implement processes in preparation for the full resumption of border operations pursuant to Title 8 authorities," such as "readying decompression plans, deploying additional personnel and resources to support U.S. Border Patrol, and enhancing its ability to safely hold noncitizens it encounters." *Id.* at 19,955–56. CDC is to "review these plans and ensure that they are consistent with the language of [the Termination Order] and public health best practices." *Id.* at 19,956. The Termination Order acknowledged that "DHS [would] continue to exercise its discretion to issue case-by-case exceptions" based on the totality of the circumstances as set forth in the August Order. *Id.*

Recent news reports, however, indicate that the Defendants have accelerated their timetable, flipping the presumption of the August 2021 Order so that it is applied as the exception rather than the mandate. According to those reports, Title 42's rapid-expulsion procedures are applied only to the

extent that "there is space on Title 42 expulsion flights." *See* Bill Meluglin & Adam Shaw, *Border Patrol not using Title 42 to expel some Northern Triangle migrants ahead of its May 23 end: sources*, Fox News (Apr. 20, 2022) (available at https://fxn.ws/3K4YMxs). Counsel in a parallel case has identified at least one witness who would testify that this is both accurate and a deviation from practice under the August 2021 Order. Under that order, DHS would expel aliens from Northern Triangle countries to Mexico when expulsion flights to their home countries were full. *See* Exh. 3, St. John Decl., *Arizona v. CDC*, No. 6:22-cv-885, ECF No. 24-3 ¶ 6 (W.D. La. Apr. 21, 2022). Now, however, DHS processes those "excess illegal aliens" under Title 8's usual expedited-removal procedures, under which they are frequently released into the United States. *Id.* In addition, these Title 8 proceedings have required that agents be removed from the field to perform detention security, *id.* ¶ 7, making fewer agents available to apprehend illegal aliens and again increasing the number of aliens who are able to illegally enter the United States.

Further, counsel in that parallel case has sworn that the Defendants' counsel represented to him that these reports are true—that "DHS was already shifting to Title 8 removals in advance of the May 23 date recited in the Title 42 Termination Order." *Id.* ¶ 9. That representation included preliminary statistics regarding "the number of aliens removed to their home countries via air under Title 42, removed via expulsion to Mexico under Title 42, removed under Title 8, detained under Title 8, and released into the United States under Title 8." *Id.*

HHS's Acting Assistant Secretary for Border and Immigration Policy, Blas Nuñez-Neto, has sworn to facts that largely confirm these reports. According to Nuñez-Neto, DHS has applied Title 8's expedited-removal proceedings to approximately 5% of single adults from the Northern Triangle while Title 42

3

has been in place. *See* Exh. 4, Nuñez-Neto Decl., *Arizona v. CDC*, No. 6:22-885, ECF No. 27-1 ¶ 6 (Apr. 22, 2022). But "as part of the efforts to prepare for the ultimate lifting of Title 42, DHS has begun in recent weeks to increase the use of expedited removal for some single adults eligible for removal who would otherwise be expelled pursuant to Title 42." *Id.* ¶ 16. For the week ending April 21, 2022, for example, the number of single adults from the Northern Triangle who were placed into Title 8 expedited-removal proceedings was nearly three times the historical number—not 5%, but 14%. *Id.* Nuñez-Neto claims that Title 8 has advantages over Title 42, for example that attempted re-entry following removal under Title 8 is a crime while attempted re-entry following a Title 42 removal is not. *Id.* ¶¶ 11–12.

Nuñez-Neto does not identify the change in circumstances, particularly the "significant law enforcement interests," Exh. 1 at 42,841, that have led to the trebling of applications of Title 8. The only justification he does identify—"impos[ing] consequences for repeat unauthorized entry," for which DHS has purportedly "been exercising its exception authority for some time"—is not accompanied by evidence that the underlying circumstances—increases in the number of repeated unauthorized entries—have changed. Indeed, this has been a criticism of Title 42 since its inception. *See, e.g.,* Todd Bensman, *About Those Border Apprehension Spikes: They're Not Real, but Do Reveal a Real Problem*, Ctr. for Immig. Studies (Oct. 16, 2020), available at https://cis.org/ Bensman/About-Those-Border-Apprehension-Spikes-Theyre-Not-Real-Do-Reveal-Real-Problem.

**Argument**

**A. Texas is entitled to a TRO.**

Texas is entitled to a temporary restraining order restoring the parties to the last uncontested, peaceable status. *See* Fed. R. Civ. P. 65; *Texas v. United States*, 515 F. Supp. 3d 627, 631 (S.D. Tex. 2021) (citing *Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 829 (5th Cir. 1976) and *Canal Auth. of State of Fla. v. Callaway*, 489, F.2d 567, 576 (5th Cir. 1974)). Here, that status is the Defendants' application of the August 2021 Order, including its allowance for case-by-case exceptions, without regard to the upcoming May 23 termination of that order.

The Defendants' early implementation of the Termination Order, accomplished through inverting the mandate/exception language in the August 2021 Order, is causing Texas the same injuries, for the same reasons, as Texas identified as imminent in its Emergency Motion to Postpone or Preliminarily Enjoin, ECF 2, which Texas incorporates by reference. The Defendants' current inversion of that language, particularly insofar as they implemented it *sub silentio, see* Exh. 4 ¶¶ 13, 16 (exception authority has been used "for some time" and "has begun in recent weeks to increase"), cannot reasonably be considered as the status quo; that inversion is in fact the change in the parties' peaceable, uncontested status that necessitates the issuance of the TRO. The Court has the "equitable power to return the parties to their last uncontested status," *United States v. FDIC*, 881 F.2d 207, 210 (5th Cir. 1989), rather than allow the "currently existing status quo itself [to cause] one of the parties irreparable injury[.]" *Callaway*, 489 F.2d at 576 (quoted in *Texas v. United States*, 515 F. Supp. 3d at 631). Accordingly, and for the reasons explained in Texas's Emergency Motion to Postpone or Preliminary Enjoin, the Court should enter a TRO against Defendants.

**B. Texas is entitled to expedited discovery.**

In addition, because the Defendants control access to the information that can establish their violation of the August 2021 Order's requirements and the scope of the harm they are causing, the Court should grant Texas the right to take expedited discovery. While attempting to justify their violation of the August 2021 Order through its early termination, the Defendants have furnished only partial information, and indeed have withheld information to which only they have access. In particular, they have not identified what interests or individual, case-by-case factors have changed in "recent weeks," Exh. 4 ¶ 16, that would justify trebling the number of Northern Triangle illegal aliens not being rapidly expelling them under Title 42. Nor have they identified how *preparing* to implement the Termination Order in the future justifies their *actual* implementation of the Termination Order in the present by shifting three times as many illegal aliens to from Title 42 to Title 8 proceedings instead.

Texas is entitled to access the evidence that the Defendants have chosen not to disclose. The Court should grant that access and order the Defendants to answer expedited discovery in advance of a hearing on Texas's Emergency Motion.

## Prayer for Relief

Texas respectfully requests that the Court maintain the status quo ante by issuing a temporary restraining order that requires the Defendants to continue enforcing the August 2021 Order without regard to the upcoming termination of that order on May 23, 2022. Texas also respectfully requests that the Court grant it expedited discovery as requested and further requests all other relief to which it may be entitled.

| | |
|---|---|
| Dated April 24, 2022. | Respectfully submitted, |
| KEN PAXTON<br>Attorney General of Texas | AARON F. REITZ<br>*Lead Counsel*<br>Deputy Attorney General for Legal Strategy |
| BRENT WEBSTER<br>First Assistant Attorney General | Texas Bar No. 24105704<br>aaron.reitz@oag.texas.gov |
| OFFICE OF THE ATTORNEY GENERAL<br>P.O. Box 12548<br>Austin, Texas 78711-2548<br>(512) 936-1700 | /s/ Leif A. Olson<br>LEIF A. OLSON<br>Special Counsel<br>Texas Bar No. 24032801<br>leif.olson@oag.texas.gov |
| | CHRISTOPHER D. HILTON<br>Chief, General Litigation Division<br>Texas Bar No. 24087727<br>christopher.hilton@oag.texas.gov |
| | GENE P. HAMILTON*<br>America First Legal Foundation<br>300 Independence Avenue SE<br>Washington, DC 20003<br>(202) 964-3721<br>gene.hamilton@aflegal.org |
| | CHRISTOPHER J. HAJEC*<br>MATT A. CRAPO*<br>Immigration Reform Law Institute<br>25 Massachusetts Ave. NW, Suite 335<br>Washington, DC 20001<br>(540) 205-7986<br>litigation@irli.org |
| | *Counsel for the State of Texas* |

---

\*   Motion for admission *pro hac vice* forthcoming.

## Certificate of Compliance

I certify that, according to the word-count feature of Microsoft Word, the body of this motion contains 1,679 words.

/s/ Leif A. Olson

## Certificate of Service

I certify that, on April 24, 2022, I emailed this motion and its exhibits to Daniel David Hu, Chief of the Civil Division of the U.S. Attorney's Office for the Southern District of Texas, at daniel.hu@usdoj.gov.

/s/ Leif A. Olson